## SHELDON *v.* SHELDON *et al.*

*(Supreme Court, General Term, Fifth Department.* October 23, 1890.)

1. EXECUTORS—CLAIMS AGAINST DECEDENT—EVIDENCE.

In an action against executors for an accounting of moneys alleged to have been received by their testator from plaintiff, his wife, under an agreement to invest the same and account to her for the proceeds, there was evidence that, at the sale of the land from which the money was derived, a mortgage was executed to her by the purchaser for about one-half of the price, and that four days afterwards another mortgage was taken in her name, from another person, and that these mortgages were, when due, satisfied by plaintiff. Neither of the mortgages was on land conveyed by plaintiff, and there was nothing to connect them with the transaction in question, except the proximity of dates and the approximation of their aggregate amount to the purchase price. *Held* that, while it was probable that the mortgages represented the investment of the moneys in question, yet there was nothing in that fact to controvert plaintiff's theory that the investment was made by her husband in her name, and that, when the mortgages were paid, the money was received by the husband and again invested by him.

2. SAME—CONCLUSIVENESS OF ACCOUNT.

A decree of the surrogate, settling the accounts of defendants and directing a distribution of the estate then in hand, was conclusive upon plaintiff, who was a party to it, only so far as it went, and did not render it necessary for her, in order to maintain the action, to show that anything had since been, or might have been, realized upon the assets remaining in their hands.

3. SAME—CANCELLATION OF CLAIM.

A legacy to plaintiff expressly given in lieu of dower, and of her distributive share of testator's personal estate, did not have the effect to cancel the claim of plaintiff, there being nothing in the language of the will to indicate such an intention on the part of testator.

4. STATUTE OF LIMITATIONS—NECESSITY OF DEMAND.

The transaction being in the nature of a deposit of money by plaintiff to testator to be accounted for on her request, or payable on demand, the statute of limitations did not begin to run until demand was made.

5. WITNESS—PRIVILEGED COMMUNICATIONS.

The attorney who drew plaintiff's deed of the land for which the money in question was received testified to a declaration by testator, at the time the deed was drawn, made in the presence of plaintiff, and relating to the agreement for the investment of the money. *Held,* that the testimony was not within the exclusion of Code Civil Proc. N. Y. § 835, forbidding an attorney to disclose a communication made by his client to him in the course of his professional employment.

6. EVIDENCE—SELF-SERVING DECLARATIONS.

In such action, entries made by testator in his diary, and in his own pecuniary interest, were properly excluded when offered as evidence in behalf of defendants.

Appeal from special term.

Action by Johanna Sheldon against William B. Sheldon and others as executors of Edgar Sheldon, deceased. Defendants appeal from an interlocutory judgment, and from an order confirming the report of a referee appointed by such interlocutory judgment to take and state an account, and from the final judgment entered upon that report.

Code Civil Proc. N. Y. § 835, provides: "An attorney or counselor at law shall not be allowed to disclose a communication made by client to him, or his advice given thereon, in the course of his professional employment."

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*John T. Knox,* for appellants. *Arthur C. Smith,* for respondent.

DWIGHT, P. J.  The action was for an accounting by the defendants as executors of Edgar Sheldon, deceased, for moneys received by the testator in his life-time, from or to the use of the plaintiff, under an agreement to invest the same for her benefit and to account to her, when requested, for such moneys and for their increase.  The court at special term found upon satisfactory evidence that the deceased, in the year 1864, received under such agreement the sum of $768 from the sale of land in Michigan belonging to the plaintiff, and, by its interlocutory judgment, required the defendants to account to her for those moneys and the interest and accumulations thereon, and directed that they have credit in such accounting for any payments made thereon to the plaintiff.  The referee appointed to take and state the account reported that no payments had been made to the plaintiff, either of principal or interest, on account of the moneys so received by the deceased; that the deceased on or prior to May 25, 1865, invested, and thereafter reinvested, the fund and its accumulations for the benefit of the plaintiff, under the agreement above mentioned; and that the accumulations thereon amounted, at the time of his death, to more than simple interest for the same period of time, under the laws of this state; and, accordingly, stated the account by charging the defendants with the amount of the fund, with simple interest thereon from May 25, 1865, to the date of his report.  The affirmative findings of the referee were supported mainly by the declarations of the deceased, and by presumptive evidence, and the negative finding in respect to payment was founded upon the absence of evidence that any payment had been made. It was the province of the trial court and the referee to pass upon the weight and effect of the testimony, and we are not prepared to say that it was not such as to warrant the confirmation of the referee's report.  Certain evidence is strongly urged upon our attention as opposed to the finding that no part of the moneys in question had been paid to the plaintiff.  It was in proof that, on the day of the acknowledgment of the deed of the plaintiff's land upon the sale of which the money was received, a mortgage was executed to her by the purchaser of an undivided half of the property, for $380, which was substantially one-half of the purchase price, and that four days afterwards another mortgage was also taken in her name, executed by another person, and that both of these mortgages were afterwards, and at about the time they fell due, satisfied by the plaintiff.  Neither of these mortgages was on the land conveyed by the plaintiff, and there is nothing to connect them with the transaction in question, except the proximity of dates and the approximation of their aggregate amount to the amount of the purchase price.  It is altogether probable that the two mortgages represent the investment of the greater portion of the moneys in question; but there is nothing in that fact which necessarily contravenes the plaintiff's theory that the investment was made by her husband in her name, and that, when the mortgages were paid, the money was received by the husband and again invested by him,—in the plaintiff's name or otherwise,—for her benefit.  We think the findings of the court, and the report of the referee as confirmed by the court, must be regarded as conclusive upon the questions of fact involved in the inquiry.

The questions of law involved relate to the application of the statute of limitations, the effect of a legacy to the plaintiff in the will of the deceased, and the effect of a decree of the surrogate by which the accounts of the executors, defendants, were judicially settled up to the 23d day of July, 1883, and a distribution was made of the funds of the estate then in their hands.  This decree was by its terms not a final one, and was conclusive upon the plaintiff (who was a party to it) only so far as it went.  A large amount of nominal assets remained in the hands of the executors, upon which nothing had been realized at the date of the accounting, but which the executors were required by the decree to use due diligence thereafter to collect.  It was not necessary for the plaintiff, in order to maintain this action, to show that anything had

since been, or might have been, realized upon those assets. That may be a necessary subject of inquiry when the attempt is made to enforce the judgment herein.

The legacy to the plaintiff was expressly given in lieu of dower, and of the widow's distributive share of the personal estate. There is nothing in the language of the provision to indicate an intention that the legacy should cancel the claim of the plaintiff, which was then wholly unliquidated and might be largely increased or diminished before the will should take effect. The effect of a legacy by a debtor to his creditor is governed by the intent of the former, (*Phillips* v. *McCombs*, 53 N. Y. 494; *Boughton* v. *Flint*, 74 N. Y. 476, 482;) and an intention thereby to pay the debt must be either evidenced by the language of the provision or fairly to be inferred from the circumstances of the case. We do not find such evidence in this case.

The transaction found by the court below was clearly in the nature of a deposit of money by the plaintiff with the deceased, to be accounted for on her request, or payable on demand. Such being the case, the statute of limitations did not begin to run until demand was made, (*Boughton* v. *Flint*, *supra*, 481, 482; Code Civil Proc. § 410, subd. 2; *In re Waldron*, 28 Hun, 481;) and the finding that no demand had been made during the life-time of the deceased, nor upon his executors until shortly before the commencement of the action, is in accordance with the evidence.

A great number of exceptions were taken by the defendants to rulings of the court and of the referee upon questions of evidence. The rulings particularly urged upon our attention are two, one of which excluded certain entries in the diary of the deceased, which were offered by the defendants; and the other admitted a portion of the testimony of the witness Dewit C. Gage, taken on commission in the state of Michigan. Mr. Gage was an attorney and counselor at law, and was the scrivener who drew the plaintiff's deed of the land for which the moneys in question were received. The testimony was objected to as a privileged communication under section 835 of the Code of Civil Procedure, but the objection was plainly not tenable. The first declaration, testified to as made by the deceased at the time the deed was drawn, was made in presence of his wife, the other party to the agreement to which the declaration referred; and the subsequent declarations testified to by the witness were not shown to have been made in the course of, nor in connection with, any professional employment of the witness. None of the testimony of this witness was within the exclusion of the statute, nor of the rule at common law upon which the statute was based. There seems to be no principle upon which the entries made by the deceased in his diary, and in his own pecuniary interest, could have been received in favor of his personal representatives. A party cannot make evidence in his own behalf, either by written or spoken declarations made in the absence of the other party in interest.

We find no other exception in the case which calls for special consideration. The judgments and order appealed from should be affirmed, with costs. All concur.